NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER L., <br>                             Plaintiff, <br> v. <br> COMMISSIONER OF SOCIAL SECURITY, <br>                             Defendant. | Civil Action No.: 23-21677 <br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

## I. INTRODUCTION

Before the Court is the appeal of Peter L.[1] ("Plaintiff") seeking review of a final decision by the Commissioner of Social Security ("Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income under the Social Security Act ("SSA" or the "Act"). ECF No. 1; *see also* ECF No. 9 ("Br."). Defendant opposed the appeal (ECF No. 11) "Opp.")), and Plaintiff replied in support (ECF No. 12 ("Reply")). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

## II. BACKGROUND

Plaintiff is a 56-year-old male with a high school education and has previously worked as a data communication technician. R. at 44. Plaintiff filed for DIB and supplemental security income on June 8, 2020, alleging disability beginning on February 1, 2016. R. at 33. Plaintiff's disability application was premised on medical conditions including diabetes, a herniated disc, and

---

[1] Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases. D.N.J. Standing Order 2021-10; see also *Bryan S. v. Kijakazi*, No. 20-cv-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

1

problems in his shoulder, hip, back, and neck. R. at 142, 374. Plaintiff did not appear to claim mental health impairments on his application, but his mental health was considered by the ALJ. *Id.* As described below, Plaintiff's arguments on appeal concern the ALJ's evaluation of the opinion of one of Plaintiff's treatment providers, and the ALJ's findings regarding the severity of Plaintiff's mental impairments.

Plaintiff was involved in a motorcycle accident in February 2016, the same month as the alleged onset of his disability. R. at 801. CT scans and x-rays performed after the accident revealed moderate spinal degeneration but no dislocations, fractures, or other acute injuries. R. at 807-17. An MRI performed about three months later in response to ongoing knee and hip pain showed soft tissue swelling in both areas, a labral tear, and a cyst and fluid in the left knee. R. at 514-17. Plaintiff was prescribed Ultram to manage his moderate pain, R. at 875, and briefly undertook physical therapy in late 2016 before being discharged due to non-compliance, R. at 505-511. Plaintiff's prognosis for recovery at that time was determined by his physical therapist to be "good." R. at 510.

Plaintiff has since received primary care and pain management treatment for his reported symptoms. These symptoms include, among other things, back and neck pain, weakness and numbness on his left side, and a herniated disc. *See, e.g.*, R. at 634-35. Plaintiff's treatment has included steroidal injections and further prescription medication management. *See, e.g.*, R. 634-38. Consultation notes indicate that Plaintiff has not been considered a candidate for surgery and only requires medication management. R. at 639.

Medical records concerning Plaintiff's strength and mobility have offered differing conclusions. Some records indicate reduced strength and mobility, *see, e.g.*, R. at 573-75 (noting a decreased range of spinal rotation), R. at 634-38 (noting weakness), while others indicate regular

strength and range of motion, *see, e.g.*, R. at 616-617 (noting normal range of motion, strength, and gait), 902-03 (noting normal muscle tone and gait). The state agency consultants who reviewed Plaintiff's disability application determined that he had physical impairments of the musculoskeletal system but found that he was not disabled. R. at 153-164, 195-202.

Plaintiff has neither received psychiatric counseling nor been admitted to a psychiatric hospital. R. at 574. Indeed, Plaintiff's medical records indicate an unremarkable psychiatric condition. *See, e.g.*, R. at 472 (describing Plaintiff as "alert and oriented"), 574 (noting lack of psychiatric diagnoses), 828 (describing Plaintiff's mood and affect as "appropriate"). Plaintiff has on multiple occasions affirmatively denied experiencing depression, anxiety, or suicidal thoughts. *See, e.g.*, R. at 646 (noting Plaintiff "denies depression" and reports "no thoughts of hurting self"), 682 (same), 878 (noting Plaintiff "denied anxiety and depression"). Plaintiff has sometimes reported experiencing anxiety, but stated it was under control. *See, e.g.*, R. at 636, 676, 682. Plaintiff has also sometimes reported depression stemming from his physical pain, but treatment providers found his mood and affect to be normal. R. at 540-41, 1100-01.

Although Plaintiff did not claim mental impairments on his disability application, to ensure a complete record, a state agency psychological consultant requested that Plaintiff receive a psychological evaluation from David M. Gelber, Ph.D. R. at 148, 629. In his evaluation, Dr. Gelber noted that he did not review reports from past examinations "or any other information" as part of his evaluation. *Id.* Dr. Gelber found Plaintiff's mood to be "markedly anxious and moderately depressed" during his examination and found his presentation to be consistent with diagnoses of generalized anxiety disorder and adjustment disorder with depressed mood. R. at 631. Dr. Gelber also found that Plaintiff has "moderate deficits in concentration and short-term memory ability," but stated that more complete testing would be necessary for a more accurate estimation. R. at 631-

32. Relying on this report, state agency psychological consultants found Plaintiff has moderate psychological limitations and should be limited to simple, routine tasks and occasional changes in workplace routines. R. at 185-87.

As noted, Plaintiff filed for DIB and supplemental security income on June 8, 2020, alleging disability beginning on February 1, 2016. R. at 33. His application was denied initially and on reconsideration. *Id.* Upon Plaintiff's request, the ALJ held a hearing on Plaintiff's application on August 31, 2021, and a supplemental hearing on July 14, 2022. *Id.* The ALJ issued a decision on August 3, 2022, finding Plaintiff not disabled during the relevant period. R. at 30-53. The Appeals Council denied Plaintiff's request for a review of that decision, rendering the ALJ decision final. R. at 17-22. Plaintiff then brought the instant appeal on October 31, 2023. ECF No. 1.

### III. **LEGAL STANDARD**

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility

of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B. Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. *Id.* §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

### C. Sequential Evaluation for a Continuing Disability

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit his ability to work. *Id.* Third, if he has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is adequate to perform his past relevant work. *Id.* Fifth, if his RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four of this test. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

6

## IV. DISCUSSION

### A. Summary of the ALJ's Decision

After considering the evidence and following the five-step analysis outlined in 20 C.F.R. § 404.1520(a), the ALJ found that Plaintiff was not disabled during the relevant period. R. at 30-53.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. R. at 36.

At step two, the ALJ found that Plaintiff had the following severe impairments: cardiomyopathy; diabetes mellitus; degenerative disc disease; cervical and lumbar radiculopathy; degenerative joint disease of the left hip; and history of left shoulder surgery. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. R. at 37.

The ALJ then determined that Plaintiff had an RFC for:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl. He cannot climb ladders, ropes or scaffolds. The claimant can frequently handle, and frequently reach.

R. at 38.

At step four, the ALJ determined that Plaintiff could not perform any past relevant work, crediting the testimony of the vocational expert. R. at 44.

At step five, the ALJ found that, considering Plaintiff's RFC and the testimony of the vocational expert, there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform. R. at 44-45. Accordingly, the ALJ determined that Plaintiff was not disabled during the relevant period. R. at 45.

### B. Plaintiff's Arguments on Appeal

Plaintiff offers two overarching arguments on appeal. First, Plaintiff argues that the ALJ failed to properly evaluate the opinion of one of Plaintiff's treatment providers, Dr. DeJesus. Second, Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments are non-severe.

#### 1. Dr. DeJesus

Plaintiff claims that the ALJ's decision is not supported by substantial evidence because the ALJ failed to "properly evaluate" the opinion Dr. DeJesus, one of Plaintiff's pain management providers. Br. at 15. Plaintiff takes issue with two aspects of the ALJ's consideration of Dr. DeJesus's opinion. First, he claims that the ALJ found Dr. DeJesus's opinion to be inconsistent with Plaintiff's "conservative" treatment regimen and asserts this is error because Plaintiff's treatment—which includes injections and physical therapy—"indicate[s] a greater level of treatment." *Id.* at 18. Second, he claims that the ALJ found Dr. DeJesus's opinion to be inconsistent with other medical evidence in the record and asserts this is error because the record is "replete" with evidence supporting Dr. DeJesus's opinion. *Id.* at 19.

#### a. *Treatment Level*

Plaintiff asserts that the ALJ "claimed Dr. DeJesus's opinions were inconsistent with Plaintiff's allegedly conservative treatment," which included steroid injections and physical therapy. Br. at 18. According to Plaintiff, this determination was incorrect because in the Third Circuit, treatment including injections or physical therapy is not considered conservative but rather "indicate[s] a greater level of treatment." *Id.*

To start, Plaintiff appears to misapprehend the ALJ's decision. The ALJ does not appear to find that Plaintiff's treatment *in its entirety* was conservative, but rather points to Dr. DeJesus's "*own* conservative treatment records." R. at 42-43 (emphasis added). Indeed, the ALJ prefaces this description of Plaintiff's treatment by detailing Dr. DeJesus's "*own* longitudinal treatment records, which show that the claimant is maintained on conservative medication management with little adjustments." R. at 43 (emphasis added). In short, the ALJ does not appear to find that Plaintiff's treatment as a whole was conservative, but rather appears to find that the treatment provided by Dr. DeJesus—which consisted of "conservative medication management"—was conservative and thus in conflict with the provider's "extreme opinions." R. at 43.

Furthermore, Plaintiff appears to misconstrue the relevant case law. In the Third Circuit, neither injections nor physical therapy are considered to indicate greater than "conservative" levels of treatment. *See, e.g.*, *David K. v. Kijakazi*, No. 20-12419, 2022 WL 225451, at *10 ("Courts in this circuit have characterized physical therapy and injections as conservative treatment.") (collecting cases); *John C. v. Kijakazi*, No. 20-20442, 2023 WL 4446954, at *11 (D.N.J. July 11, 2023) (finding "the ALJ fairly characterized Plaintiff's treatment history as conservative" despite use of "medication, physical therapy" and "injections") (collecting cases).[2]

---

[2] The cases cited by Plaintiff do not hold otherwise. *See* Br. at 18. The first, *Laurie Sternberg v. Comm'r of Soc. Sec.*, expressly states that the ALJ's decision below did "not rely on a finding that [plaintiff] received only 'conservative treatment'" and thus does not opine on what constitutes "conservative" treatment. 438 Fed. Appx. 89, 97 (3d Cir. 2011). The second, *Robinson-Jones v. Astrue*, also does not opine on what constitutes "conservative" treatment, but merely references a recommendation from the plaintiff's treatment provider. No. 10-588, 2011 WL 2938049, at *3 (D. Del. July 19, 2011).

9

b. *Medical Evidence*

Plaintiff next states that the ALJ "claimed [Dr. DeJesus's] opinions were inconsistent with other medical evidence which showed unremarkable strength, gait, and range of motion." Br. at 19. According to Plaintiff, "this conclusion was based on a selective view of the record" which was in fact "replete with evidence consistent with Dr. DeJesus's opinions." *Id.*

Initially, Plaintiff appears to misconstrue the Court's role on appeal, which does not consist of reweighing the evidence presented to the ALJ. In support of his argument, Plaintiff points to exam findings and similar evidence indicating restrictions on his range of motion and the presence of other physical deficits. Br. at 19-21. However, a court must "uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, so long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 Fed. Appx. 199, 201 (3d Cir. 2012). Here, the ALJ adequately supported his opinion with evidence—providing six pages of reasoned analysis—including the results of a May 2020 exam in which Plaintiff displayed "normal strength, gait, and range of motion." R. at 43. This analysis is sufficient to uphold the ALJ's finding despite the presence in the record of allegedly contrary evidence. *See Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 272 (D.N.J. 2022) (upholding ALJ decision despite "contrary evidence in the record that supports Plaintiff[]" where the ALJ "weighed the same against the conflicting evidence in the record and cited to that conflicting evidence in explaining her decision").

Nevertheless, Plaintiff appears to mischaracterize the ALJ's findings. Contrary to the assertion that the ALJ concluded Plaintiff "showed unremarkable strength, gait, and range of motion," Br. at 19, the ALJ's RFC determination accounted for deficits in these areas by limiting Plaintiff to "light work," R. at 38. Indeed, in explaining his RFC determination, the ALJ expressly

cited opinions finding that Plaintiff has "exertional and postural limitations," as well as "limitations regarding manipulative functioning." R. at 43. However, the ALJ did find that after reviewing the evidence in toto, Plaintiff had "a greater sustained capacity than he alleges." *Id.* In short, the ALJ appropriately weighed conflicting evidence concerning Plaintiff's strength, gait, and range of motion and, and after making findings, crafted the RFC accordingly. *See Stancavage v. Saul*, 469 F. Supp. 3d 311, 333 (M.D. Pa. 2020) (noting it is the role of the ALJ to "evaluate all the medical opinions in the record . . . and [] resolve any conflicts" as well as "make the ultimate . . . RFC determination[]").

### 2. Mental Impairments

Plaintiff next claims that the ALJ's determination that Plaintiff's mental impairments are non-severe is not supported by substantial evidence. Br. at 22. In particular, Plaintiff asserts that it was error for the ALJ to find that the opinions of Dr. Gelber and the state agency consultants regarding Plaintiff's mental condition were "unpersuasive." *Id.* Plaintiff provides several arguments for this position which will be discussed in turn.

#### a. *Subjective Reports*

First, Plaintiff argues that "the ALJ's claim that Dr. Gelber's opinion primarily relied on subjective complaints was a mischaracterization of his examination findings." Br. at 23-24. Instead, Plaintiff asserts that Dr. Gelber's findings relied on both "objective observations and subjective reports." *Id.* at 24. In any event, Plaintiff states, mental impairments "are inherently subjective" and thus it is proper for a physician to rely on subjective reports in making a diagnosis. *Id.* at 24-25.

To begin, the ALJ's characterization of Dr. Gelber's opinion is supported by the record. Dr. Gelber stated that he did not rely on "reports from past examinations or any other information,"

R. at 629, and much of his opinion details self-reporting of symptoms by Plaintiff, *see* R. at 630 (describing Plaintiff's "reports" of memory and mood problems). Insofar as Dr. Gelber also relied on a cognitive screening exam, *see* R. at 631, this fact is not inconsistent with the ALJ's assertion that Dr. Gelber relied "primarily" (but not solely) on subjective reporting, R. at 37.

Moreover, contrary to Plaintiff's claim that mental impairments are "inherently subjective," case law warns against relying on an individual's self-reported psychological symptoms. For instance, in *Morris v. Barnhart*—a case cited by Plaintiff—where a claimant complained of pain, severe depression, and anxiety, the court instructed that "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion." 78 Fed. Appx. 820, 824 (3d Cir. 2003). Indeed, the court in *Morris* upheld the ALJ's decision to "discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms." *Id.* at 825; *see also Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279 (M.D. Pa. 2022) ("It is well settled in the Third Circuit that allegations of pain and other subjective symptoms must be supported by objective medical evidence.") (internal quotations omitted).

b. *Daily Activities*

Second, Plaintiff argues that the ALJ "discounted the findings of Dr. Gelber and the State agents by finding them inconsistent with Plaintiff's activities of daily living" but "failed to explain how Plaintiff's activities of daily living were inconsistent with findings of severe mental impairments." Br. at 25. Specifically, Plaintiff asserts that the ALJ "provided no citation to any of claimant's 'activities,' nor did he explain how the 'activities' failed to support the opinion [of Dr. Gelber and the state agency consultants]." Br. at 25-26.

However, the ALJ's decision makes clear that he is referencing the "activities" performed by Plaintiff that are described in Dr. Gelber's report. In the section cited by Plaintiff, the ALJ is discussing the opinions of Dr. Gelber and the state agency consultants, and remarks that those opinions are "inconsistent with . . . the claimant's activities of daily living." R. at 37. It is apparent from the fact that the ALJ's analysis in this section centers exclusively around Dr. Gelber's examination and opinion that the ALJ is referring to the activities reported by Dr. Gelber. *See Clutter v. Colvin*, No. 13-932, 2014 WL 4231297, at *1 n.1 (W.D. Pa. Aug. 26, 2014) (finding that ALJ's "discussion of th[e] evidence, read in the context of the entire decision, suffices to permit meaningful appellate review").[3]

Indeed, a review of Dr. Gelber's report elucidates the ALJ's discussion. Dr. Gelber reported that Plaintiff:

> gets up, takes a shower, eats, then feeds cat and empties litter box. He watches TV and talks to friends and family by phone. He eats lunch and dinner. He takes naps throughout the day. He does not drive or use public transportation; his brother or girlfriend drive him places. He does chores such as dishwasher, prepare simple meals, and light shopping. He lives with his brother who does most household chores and laundry.

R. at 632. Dr. Gelber added that Plaintiff "does banking and bill paying independently" and "appears capable of managing personal finances independently." *Id.* The ALJ thus found that this selection of activities performed by Plaintiff was inconsistent with the opinions offered by Dr.

---

[3] Plaintiff's citation to *Glenn W. v. Kijakazi* is unavailing. *See* Br. at 25, Reply at 5 (citing No. 21-2724, 2023 WL 238823, at *6 (D.N.J. Jan. 18, 2023)). There, the court found that the ALJ's statement that a treating physician's opinion was "not supported by the claimant's activities," without providing any citation to those "activities," "impede[d] the Court's ability to follow the ALJ's reasoning." *Id.* Here, the Court can ably follow the ALJ's reasoning by reading his statement in the context of his overall discussion of Dr. Gelber and the state agency consultants' opinions.

Gelber and the state agency consultants that Plaintiff has a "severe mental impairment." *See Lozado v. Barnhart*, 331 F. Supp. 2d 325, 338 (E.D. Pa. 2004) ("Plaintiff's daily activities may properly be considered in evaluating her subjective complaints as to the severity of her mental impairments."); *Fouch v. Barnhart*, 80 Fed. Appx. 181, 185-86 (3d Cir. 2003) (noting ALJ "determines the extent of mental impairment by rating severity of restrictions in four areas of activities" including "daily living" and "social functioning").

### c. *Mental Health Treatment*

Third, Plaintiff argues that the ALJ "erred in finding severe mental impairment inconsistent with Plaintiff's lack of mental health treatment" because "a lack of treatment can very well be symptomatic of those impairments." Br. at 27. Accordingly, Plaintiff contends that the ALJ "failed to consider if Plaintiff's lack of treatment was in fact a result of his mental impairments." *Id.*

In fact, an ALJ may properly draw an adverse inference from a claimant's failure to seek treatment for an alleged condition. *See Jacqueline D. v. Comm'r of Soc. Sec.*, No. 21-3569, 2022 WL 1224941, at *4 (D.N.J. Apr. 26, 2022) ("It is appropriate for an ALJ to draw an inference adverse to Plaintiff from the fact that she has not sought medical assistance to relieve her professed pain.") (internal quotation omitted). Although an ALJ may not draw such an inference without "first considering any explanation" such as mental illness, *Voorhees v. Colvin*, 215 F. Supp. 3d 358, 381 (M.D. Pa. 2015), Plaintiff does not appear to point to any evidence in the record indicating that Plaintiff's lack of treatment was caused by his alleged mental impairments, *see Stancavage v. Saul*, 469 F. Supp. 3d 311, 324 (M.D. Pa. 2020) (noting ALJ's decision is based on "evidence in the record"); *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 360 (3d Cir. 2011) ("remand cannot be justified based on the ALJ's failure to consider . . . documents" that "were never before the ALJ").

### d. *Medical Evidence*

Fourth, Plaintiff argues that the ALJ's finding regarding Plaintiff's mental impairments "went against every mental opinion of record." Br. at 27. Plaintiff claims that the ALJ thereby impermissibly "substitut[ed] his own lay opinion over those of medical experts." *Id.*

Although an ALJ "is not permitted to interpret raw medical data when evaluating a claimant's functional capacity," the ALJ is "entitled to resolve conflicts in the evidence and determine the ultimate question of disability." *Phillips v. Berryhill*, No. 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. 2017). Here, the ALJ did not "interpret raw medical data" but rather evaluated the consistency of Dr. Gelber and the state agency consultants' opinions when considered alongside Plaintiff's "unremarkable status examination findings" and "lack of any significant mental health treatment or diagnosis during the period at issue," among other facts. R. at 37. *See also Desorte v. Comm'r of Soc. Sec.*, No. 17-11407, 2019 WL 1238827, at *4 (holding ALJ's finding to be appropriate due to "the absence of evidence to support the severity of an impairment"). Thus, the ALJ properly "resolve[d] conflicts in the evidence" presented. *Phillips*, 2017 WL 2224931, at *4.[4]

## V. **CONCLUSION**

In sum, the ALJ both properly evaluated the opinion of Dr. DeJesus and determined that Plaintiff's mental impairments were non-severe. Therefore, the ALJ's decision is affirmed.

**Accordingly, IT IS** on this 14th day of March, 2025,

**ORDERED** that Plaintiff's appeal (ECF No. 1) is **DENIED**; and it is further

---

[4] Insofar as Plaintiff argues that the ALJ's finding at step two "permeated the rest of the ALJ's decision," Br. at 28, the Court reiterates that—for the reasons above—the ALJ's finding at step two was appropriate and the ALJ's decision not to impose mental limitations in the RFC was supported by the record.

15

**ORDERED** that the decision of the Administrative Law Judge is hereby **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court shall mark this matter as **CLOSED.**

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　_/s/ Claire C. Cecchi_
　　　　　　　　　　　　　　　　　　　　　　　　**CLAIRE C. CECCHI, U.S.D.J.**